**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| HILDA T. KENNEDY, | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| | Civil Action |
| v. | No. 22-05797-KMW-MJS |
| THE NEW JERSEY COURT SYSTEM, *et al.*, | **OPINION** |
| Defendants. | |

APPEARANCES:

HILDA T. KENNEDY
2834 ATLANTIC AVE, APT 815
ATLANTIC CITY, NJ 08041

    *Pro Se Plaintiff*

DANA LYNN PAOLILLO
NJ OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET, P.O. BOX 112
TRENTON, NJ, 08625

    *Counsel for Defendant the New Jersey Court System*

**WILLIAMS, District Judge:**

## I.       INTRODUCTION

Pro se plaintiff Hilda Kennedy ("Plaintiff") brings this action against the State of New Jersey Judiciary ("Defendant") alleging that Defendant is in violation of Title II of the Americans with Disabilities Act ("ADA"), and violated her First and Fourteenth Amendment rights.  Plaintiff alleges that she was discriminated against on the basis of disability by the Judge who oversaw several different lawsuits in the New Jersey State Court system.

On September 29, 2023, this Court issued an Opinion and Order permitting Plaintiff to amend her Complaint to clarify her ADA claims arising from two of her cases, ATL-L-000924-22 and ATL-L-3744-21.  On December 8, 2023, Plaintiff filed an Amended Complaint, (ECF No. 30).  On January 5, 2024, Defendant filed its Motion to Dismiss, (ECF No. 36), and on January 11, 2024, Plaintiff opposed the motion, (ECF No. 38).  On January 25, Defendant replied, (ECF No. 39).  Thereafter, on February 27, 2024, Plaintiff submitted a supplemental pleading pursuant to Fed. R. Civ. P. 15, (ECF No. 43).  Defendant opposed the filing, (ECF No. 44), and Plaintiff replied, (ECF No. 45).  For the reasons that follow, Defendant's Motion to Dismiss, (ECF No. 36), is **GRANTED** as to all claims with prejudice.[1]

## II.       BACKGROUND

For ease of reference and for the benefit of the Parties, the Court incorporates the facts as stated in its Opinion of September 29, 2023, (ECF 23), and will restate only what is necessary for the instant motion.  Further, the Court notes that Plaintiff was given leave to amend her original Complaint to reflect solely her ADA claims arising from her landlord tenant case (ATL-L-000924-

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

22) and her malpractice case (ATL-L-3744-21), which were not barred by the Rooker-Feldman doctrine. *See* Opinion at 15.

In Plaintiff's Amended Complaint, she reasserts that she was discriminated against by the New Jersey Court system due to her disability. She is legally blind and physically impaired due to various accidents and illnesses, allegedly due to the actions or lack of action by two jitney drivers and her landlord. *See* Amend. Compl. ¶¶ 1, 3, 4, 6, 7, 20, 26. Plaintiff alleges that "defendant's agent," (who, based on the same allegations being previously alleged in the original Complaint, the Court notes, is Judge Porto), discriminated against her by ignoring her when she asked him for extra assistance, hung up on her during a conference call, talked to her in a "discriminatory tone," "took over" her malpractice case (ATL-L3744-21), and denied her fee waiver requests and various stays. *Id.* ¶¶ 20, 24, 27, 30, 32, 33, 38, 51, 53, 56, 62, 68, 69, 74. She also generally asserts that "defendant," (presumably, the New Jersey Court System as a whole), "is not in compliance with ADA Title II" because the process for appeal is "impossible," cost prohibitive, and requires her to travel with papers to file. *Id.* ¶¶ 37, 38, 43, 44, 61, 70. Plaintiff spends several paragraphs describing various changes to the New Jersey Court System's protocols that could help disabled people greater access to the courts. *Id.* ¶¶ 39-42, 46, 47, 49, 59, 66. Finally, Plaintiff asserts that holding her to the standards expected of other *pro se* litigants is discriminatory because she is disabled. *Id.* ¶ 66. Plaintiff requests the following relief: declaratory judgment that she was denied her First and Fourteenth Amendment rights in her landlord tenant action (ATL-L-924-22); a permanent injunction to enjoin New Jersey Court System to be "in compliance with the ADA Title II in all cases with disabled people" and to force the New Jersey Court System to utilize "same/similar or better measures as the state-funded schools" for disability access; a declaratory

judgment that acknowledges Plaintiff's suffering due to defendant's retaliation and resulting emotional distress, as well as costs and other relief. *Id.* at 22-23.

## III.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a defendant may seek dismissal of a complaint based on a court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'"  *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 5 U.S. 137, 1 Cranch (5 U.S.) 137, 173-180 (1803)).

When considering a Rule 12(b)(1) motion challenging subject matter jurisdiction, "[a] district court has to first determine . . . whether [the] motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).  As the Third Circuit explained in *Constitution Part of Pennsylvania v. Aichele*:

> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present.  Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint.

*Id.* at 358 (citing *Mortensen*, 549 F.2d at 891). On the other hand, a factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.*

The Third Circuit has held that, although Eleventh Amendment immunity is not, strictly speaking, a matter of subject-matter jurisdiction, it nonetheless analyzes the jurisdictional aspects of sovereign immunity under the scope of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *See Wilson v. N.J. Dep't of Corrs.*, No. 16-7915, 2017 U.S. Dist. LEXIS 170321 at *5, *8-9 (D.N.J. Oct. 13, 2017) (citing *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008)). While plaintiff must usually bear the burden of persuading the court that subject matter jurisdiction exists under Rule 12(b)(1), the party asserting Eleventh Amendment immunity bears the burden of proving Eleventh Amendment applicability because such immunity can be expressly waived or forfeited and therefore "does not implicate federal subject matter jurisdiction in the ordinary sense." *Messina v. Coll. of N.J.*, 624 F. Supp. 3d 523, 526-27 (D.N.J. 2022) (internal citations and quotations omitted).

Therefore, in the context of the instant motions raising Eleventh Amendment immunity as a defense, the Court will analyze the pleading in accordance with the standard governing a facial attack. *See Fidanzato v. Somerset Hunterdon, and Warren Counties Vicinage 13*, No. 11-5132, 2012 WL 4508008 at *5 (D.N.J. Sept. 28, 2012) ("an assertion of immunity under the Eleventh Amendment is a facial attack on this Court's subject matter jurisdiction"). Therefore, "'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering*, 678 F.3d at 243). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss

under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Id.* (citation omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

A district court may consider allegations in the complaint; matters of public record, orders, and exhibits attached to the complaint are taken into consideration. *Francis E. Parker Mem'l*

*Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, generally, a district court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

*Pro se* complaints are liberally construed and "held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). A *pro se* complaint will be dismissed if "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mishra v. Fox*, 197 F. App'x 167, 168 (3d Cir. 2006) (quoting *McDowell v. Delaware State Police*, 88 F.3d 188, 189 (3d Cir. 1996)).

### C. Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15 governs the availability and timing for amending a complaint. *See* Fed. R. Civ. P. 15. Pursuant to Rule 15(a) a plaintiff may amend their pleading once a as matter of course, but at all other times, a plaintiff must seek leave of the court to amend their complaint. *Id.*[2] When considering a plaintiff's motion to amend, the Supreme Court has

---

[2] Fed. R. Civ. P. 15
(a) Amendments Before Trial.

instructed that although "the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court may deny leave to amend if it is being made in bad faith, for dilatory motive, undue delay, prejudice, or futility. *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). To assess whether amending a complaint is futile the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*

## IV.   DISCUSSION

To avoid reiterating what was previously decided, to the extent that Plaintiff's Amended Complaint raises ADA claims against Judge Porto and/or Judge Siracusa,[3] those claims were dismissed previously and cannot be re-asserted because the ADA does not provide for individual liability. Further, to the extent that Plaintiff attempts to restate a claim against the individual judges while operating in their official capacities, such claims cannot apply because judges are not "public entities" as defined by the ADA and are not subject to liability under that statute. *Fidanzato v. Somerset Hunterdon, and Warren Counties Vicinage 13*, No. 11-5132, 2012 WL 4508008 at *7

---

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
    (A) 21 days after serving it, or
    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
(3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

[3] Due to the fact Plaintiff did not explicitly name the "defendant agent" in her Amended Complaint, the Court can only ascertain the identities of Judge Porto and Judge Siracusa due to the overlap in allegations from the original Complaint.

(D.N.J. Sept. 28, 2012); *see also Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (noting "individuals are not liable under Titles I and II of the ADA"). Therefore, the Court will only assess the Amended Complaint as it relates to the New Jersey State Court system as a whole.

### A. Request to Amend/Supplement Pursuant to Fed. R. Civ. P. 15

Federal Rule of Civil Procedure 15 ("Rule 15") governs motions to amend or supplement the pleadings. Plaintiff seems to assert that her motion is intended to supplement and further inform the Court regarding her state court proceedings, rather than amend the pleadings, and thus her motion will be addressed pursuant to Rule 15(d), which states in pertinent part:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

The Court notes that Plaintiff references two cases. First, she notes that the state court is determining if the outcome of her landlord tenant case (ATL-L-000924-22) warrants the application of the entire controversy doctrine in a different state case. *See* Motion to Supplement ¶¶ 2-3. She also addresses a separate federal case before this Court, which discusses similar issues as presented in her state case (ATL-L-000924-22). *Id.* ¶¶ 10-12. Plaintiff brings this information to this Court's attention to professedly "unit[e] the state action with the federal action." *Id.* ¶ 13. However, this the Court cannot do. Simply put, federal courts do not sit in review of state courts. When a plaintiff believes the first court reached an "erroneous conclusion," they are not completely deprived of a second action, however the matter can only be corrected by direct review," (i.e. appealing to the state appellate court, which sits "above" the state trial court in review). *Federated*

*Dep't Stores v. Moitie*, 452 U.S. 394, 398-99 (1981). "A judgment merely voidable . . . based upon an erroneous view of the law is not open to [a] collateral attack" (i.e. bringing a case from a state court to a federal district court, which is parallel or collateral to the state courts), "indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments[.]" *Id*. Stated differently, if Plaintiff believes that the court in her New Jersey state cases applied the entire controversy doctrine in error, or applied res judicata[4] in error, this Court does not have the authority to intervene nor disturb those rulings.

To the extent that Plaintiff intended to further amend her complaint with the information about her other cases, this Court must review the proposed amendment pursuant to Rule 15(a). To this end, a plaintiff may amend their pleading once as a matter of course, but at all other times, a plaintiff must seek leave of the court to amend their complaint. *See* Fed. R. Civ. P. 15(a). When considering a plaintiff's motion to amend, the Supreme Court has instructed that although "the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court may deny leave to amend if it is being made in bad faith, for dilatory motive, undue delay, prejudice, or futility. *Id*. (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). To assess whether amending a complaint is futile the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id*.

---

[4] Both doctrines serving the same purpose: to stop repetitive litigation in matters already disposed of by a court.

Here, pursuant to Rule 15, Plaintiff can only amend her Complaint by the Court's leave because her request to "supplement" her Complaint occurred beyond the 21 days where a party may amend their pleading as a matter of course after serving it or after service of a motion under Rule 12(b), and Defendant does not consent to her "supplement." *See* Fed. R. Civ. P. 15(a)(1)-(2).

To the extent Plaintiff intends to amend her complaint, the Court must deny the request because as set forth below, any proposed amendment would be futile.

### B.  First Amendment Claim

Plaintiff asserts that her First Amendment rights were violated in relation to her state court landlord tenant case (ATL-L-924-22).  The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Rachlin v. Baumann*, No.21-15343, 2022 WL 4239790 at *18 (D.N.J. Feb. 22, 2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).  For a plaintiff to state a claim for a First Amendment violation for retaliation, which is what the Court interprets from Plaintiff's Amended Complaint, requires that 1) the plaintiff engaged in a constitutionally-protected activity, 2) that the government responded with retaliation, and 3) that the protected activity caused the retaliation. *Id.* Causation is defined as "but-for causation," where "without which the adverse action would not have been taken." *Id.* On a motion to dismiss, "an obvious alternative explanation" for a defendant's conduct "negates any inference of retaliation." *Id.* (citing *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013)).

Here, the Amended Complaint does not allege any plausible facts to suggest or support an inference that Plaintiff experienced a First Amendment violation.  While there can be a cause of action under the First Amendment for "retaliation" stemming from the filing of a lawsuit, there are no plausible facts or descriptions in the proposed amendment nor in the Amended Complaint as to

specifically how Defendant New Jersey State Court System retaliated against Plaintiff for filing her various lawsuits. The information available to the Court at this juncture shows that Plaintiff continues to litigate in state court and has filed an additional suit since her landlord tenant case, demonstrating that her access to the court system itself is unobstructed. *See* ATL-L-003015-23. To the extent that Plaintiff is attributing the actions of Judge Porto to the New Jersey Court System as a whole, characterizing his actions denying her fee waivers and dismissing her cases as retaliatory, the Court notes that her malpractice case at issue here (ATL-L-003744-21) was dismissed without prejudice on June 7, 2024, due to Plaintiff's failure to submit an expert report. *See* ATL-L-003744-21 at LCV20241652022. A denial without prejudice means that Plaintiff could reinstate the case or re-file to litigate those claims. The Court notes this fact to demonstrate that Judge Porto's ruling in that case does not obstruct Plaintiff's ability to bring her malpractice claims, and to demonstrate the obvious alternative explanation—that Judge Porto dismissed the case due to an obvious alternative reason.

The Court further notes that this theory of attribution is barred for several reasons. As discussed in the Court's previous Opinion, Judges are absolutely immune from suit when they act in the performance of their duties. *See Kajla v. Cleary*, 821 Fed. App'x 119, 121 (3d Cir. 2020). It is beyond cavil that if an employee is immune, there is no fault to transfer to the employer (here, the New Jersey Court System), through vicarious liability. *See Abdallah v. City of Paterson*, (D.N.J. May 26, 2017) (quoting *Tice v. Cramer*, 133 N.J. 347, 355 (1993) ("[t]he primary liability imposed on public entities is that of respondeat superior, when the public employee is liable for acts within the scope of that employee's employment, so too is the entity; conversely, when the public employee is not liable, neither is the entity."). Further, First Amendment retaliation claims

are generally brought under 42 U.S.C. § 1983,[5] which prohibits respondeat superior liability.  *See Villarreal v. New Jersey*, 803 Fed. App'x 583, 588 (3d Cir. 2020); *see also Williams v. City of Allentown*, 804 Fed. App'x 164, 167 (3d Cir. 2020).  Finally, as noted in the Court's previous Opinion, it is well-established that "state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the State of New Jersey, and therefore considered 'arms' of the state." *Dongon v. Banar*, 363 Fed. App'x 153, 156 (3d Cir. 2010).  And although Congress has overridden Eleventh Amendment immunity in certain statutes, it did not do so when it enacted 42 U.S.C. § 1983. *See N.J. Chinese Cmty. Ctr. v. McAleer*, No. 21-8320, 2022 WL 3403297 at *6 (D.N.J. Aug. 15, 2022).  Thus, Plaintiff's First Amendment claim must be dismissed with prejudice.

### C.  Negligent Infliction of Emotional Distress

As discussed above, the Eleventh Amendment's grant of sovereign immunity applies to many different types of legal claims, including state common law causes of action. *See Abulkhair v. Office of Atty. Ethics*, No. 16-3767, 2017 WL 2268322 at *8 (D.N.J. May 24, 2017).  While Plaintiff does not articulate her negligence claim pursuant to the New Jersey Tort Claims Act ("NJTCA"), it is implicated here because it does "expressly waive[] sovereign immunity as to certain claims," because "it provides that public entities can be sued [] for certain torts, and under certain conditions." *Id.* (citing N.J.S.A. § 59:1-2).  However, to bring a claim pursuant to the NJTCA, a plaintiff must follow the statute's procedures: "[n]o action shall be brought against a public entity or public employee under this [A]ct unless the claim [is] . . . presented in accordance

---

[5] "A plaintiff may not sue a state defendant directly under the Constitution where [42 U.S.C. §] 1983 provides a remedy." *New Jersey Sand Hill Band of Lenape & Cherokee Indians, et al. v. Jon Corzine, et al.*, No. 9-683, 2010 WL 2674565 at *6 (D.N.J. Jun. 30, 2010).  Essentially, "[t]he procedural vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983." *Shinhua Liu v. Kun Lu*, No. 23-3819, 2024 WL 2750817 at *8 (D.N.J. May 29, 2024).

with the procedure set forth in this [Act]." N.J.S.A. § 59:8-3. The caselaw clearly establishes that "a claimant will be 'forever barred' from recovery against a public employee or entity if she fails 'to file the claim with the public entity within 90 days of accrual.'" *Handley v. University*, No. 21-16889, 2022 WL 4115730 at *15 (D.N.J. Sept. 9, 2022) (quoting *McNellis-Wallace v. Hoffman*, 464 N.J. Super. 409, 417, 236 A.3d 1014 (App. Div. 2020). To state a claim pursuant to the NJTCA, a plaintiff must file a written notice with the public entity within 90 days of a claim's accrual.[6] N.J.S.A. § 59:8-9 provides the sole remedy for late notices:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of [the Tort Claims Act], may, in discretion of a judge[], be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of [the Tort Claims Act] or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter[.]

N.J.S.A. § 59:8-9.

To assess whether a claimant submitted timely notice according to the NJTCA requires the Court to perform a three-step sequential analysis: it must determine when the cause of action accrued, whether a notice of claim was filed within 90 days, and whether extraordinary circumstances exist to justify filing a late notice. *See Handley*, 2022 WL 4115730 at *15. According to the act, "[a]ccrual shall mean the date on which the claim accrued." N.J.S.A. 59:8-1. New Jersey caselaw establishes that the date of accrual of a tort claim is the date on which the negligent action or omission occurred. *See Vasquez v. Rutherford*, No. 07-1350, 2007 WL

---

[6] The notice provision of the NJTCA applies to both intentional and negligent conduct. *Abulkhair*, 2017 WL 2268322 at *9.

2137937 at *4 (D.N.J. Jul. 23, 2007) (citing *Beauchamp v. Amedio*, 164 N.J. 111, 116 (2000)). The only exception to this standard occurs when the victim of the tort is either not aware of the injury, or the victim is unaware that a third party is responsible for the injury. *See id.*

There is nothing in the record to suggest that Plaintiff has complied with the filing requirements of the NJTCA to assert a claim of negligent infliction of emotional distress against Defendant in this case, nor has she demonstrated that extraordinary circumstances exist to justify filing a late notice. Further, even if Plaintiff were to provide sufficient proofs to demonstrate compliance with the mandates of the NJTCA, Plaintiff's claim would still be barred for several reasons. First, any and all actions taken by Judge Porto in ATL-L-924-22 would be time barred, because all actions taken by Judge Porto in that case have occurred over one year ago.[7] With regard to Plaintiff's malpractice case (ATL-L-3744-21), only the actions that have occurred after August of 2023 would still remain in the window of time provided by N.J.S.A. § 59:8-9 for a late filing. Second, even if Plaintiff were permitted to file a late filing for the actions that are not time barred in her malpractice case, the NJTCA does not permit the attribution of liability to a public entity where the public employee is not liable. *See* N.J.S.A. § 59:2-2(b). Again, because Judges are absolutely immune from suit when they act in the performance of their duties, there is no liability to be passed on from Judge Porto to the New Jersey Court System. *See Kajla*, 821 Fed. App'x at 121.[8] Therefore, Plaintiff's negligence claim must be dismissed with prejudice.

---

[7] It is clear from Plaintiff's pleadings that she knew of her perceived injury (Judge Porto's rulings against her) when they occurred and who was responsible for it (Judge Porto).

[8] Additionally, Plaintiff's Amended Complaint is entirely conclusory in its allegations of negligent infliction of emotional distress and would fail under Rule 12(b)(6). To state a claim for negligent infliction of emotional distress ("NIED") a plaintiff must assert some negligent conduct which is the proximate cause of the emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care. *Garcia v. Knapp*, No. 19-17946, 2020 WL 2786930 at *14 (D.N.J. May 29, 2020) (citing Decker v. Princeton Packet, Inc., 116 N.J. 418, 429 (N.J. 1989)). This can be demonstrated in two fashions: directly or indirectly. *Berk v. Ritz Carlton Condo. Ass'n*, No. 23-cv-1877, 2024 WL 228414 at *10 (D.N.J. Jan. 22, 2024). To establish a direct claim a plaintiff must assert that the defendant's conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to the emotional distress that resulted in substantial bodily injury or sickness. *Torrey v. New Jersey*, No. 13-1192, 2014 U.S. Dist. LEXIS

**D. ADA Title II Claim against New Jersey State Courts**

Title II of the Americans with Disabilities Act ("ADA") generally makes it unlawful for public entities to discriminate against individuals with disabilities in the provision of public services. *See* 42 U.S.C. §§ 12131-34. To assert a claim under Title II, a plaintiff must show: 1) that she is a qualified individual with a disability, 2) that the defendant had excluded her from a service, program, or activity of a public entity, and 3) that the exclusion was due to her disability. *See Gittens v. Scholtz*, No. 18-2519, 2019 WL 3417091 at *6 (D.N.J. Jul. 23, 2019) (citing to *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015). Public entities include States and their subdivisions. *Disability Rights N.J.*, 796 F.3d at 301. Defendant's Eleventh Amendment immunity claim is not a foregone conclusion here because Congress has abrogated Eleventh Amendment immunity under Title II of the ADA through Section 5 of the Fourteenth Amendment for conduct that "actually violates the Fourteenth Amendment." *See Parker v. Fulton*, No. 19-8926, 2019 U.S. Dist. LEXIS 224217 at *16 (D.N.J. Dec. 31, 2019) (citing *United States v. Georgia*, 546 U.S. 151, 158-59 (2006)). To determine whether immunity is applicable, or, to put it another way, whether the ADA claims Plaintiff alleges can proceed, the Court must consider: 1) which aspects of the State's alleged conduct violated Title II, 2) to what extent such misconduct also violated the Fourteenth Amendment, and 3) if the misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress' purported abrogation of

---

31146 at *72-73 (D.N.J. Mar. 11, 2014) (citing *Jablonowska v. Suther*, 195 N.J. 91, 104 (N.J. 2008)). The Court must be able to ascertain genuine and severe emotional distress as a "threshold question[] of law." *Tafaro v. Six Flags Great Adventure*, LLC, No. 17-5607, 2018 WL 1535289 at *8 (D.N.J. Mar. 29, 2018). "It is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae . . . [such as] any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so[.]" *Id.* (internal citations omitted). To state a claim for indirect NIED requires a plaintiff to show the death or serious physical injury of another caused by defendant's negligence; a marital or intimate, familial relationship between a plaintiff and the injured person; and observation of the death or injury at the scene of the accident, which results in severe emotional distress. *Torrey v. New Jersey*, No. 13-1192, 2014 U.S. Dist. LEXIS 31146 at *72-73 (D.N.J. Mar. 11, 2014).

sovereign immunity as to that class of conduct is nevertheless valid.  *United States v. Georgia*, 546 U.S. at 159.  The Court must analyze the first prong at the outset as a threshold matter: a complaint must state a claim under Title II before the Court can turn to the constitutionality of the claims and the validity of the abrogation.  *Berk v. N.J. Dep't of Hum. Servs.*, No. 23-1853, 2024 WL 3639442 at *5 (D.N.J. Aug. 2, 2024).

First, the Court must address whether Plaintiff has established that she is a qualified individual with a disability.  In Plaintiff's Amended Complaint, she does not provide any kind of official disability documents to demonstrate that she is a qualified individual.  *See id.* (holding that a plaintiff who received Supplemental Security Income and provided official documents to demonstrate her disability was continuing is sufficient to demonstrate that she is a "qualified individual").  The Court does not doubt Plaintiff's disabled status given her averments to the same, however, the law requires that the Court find sufficient pleadings to demonstrate compliance with the first prong of the analysis.  *Id.* at *5-6.  Specifically, the Court would need documentation that verifies and specifies the kind of disability a plaintiff has and permits the Court to glean the time-period or continuous nature of the condition.  *Id.* at *6.  Regardless, the Court notes, even if Plaintiff provided the documentation necessary to establish the first prong, Plaintiff's claim fails to meet the second and third prongs of the required analysis.

In analyzing the second prong, the Court must determine whether Plaintiff sufficiently pled that the defendant had excluded her from a service, program, or activity of a public entity.  The definition of what is considered a service, program, or activity is incredibly broad: "[t]he phrase 'service, program, or activity' under Title II . . . is 'extremely broad in scope and includes anything a public entity does.'" *Jackson v. Seifried*, No. 22-5106, 2024 WL 1928513 at *7 (D.N.J. Apr. 30, 2024).

However, this is where Plaintiff's pleading begins to run into trouble because her main contention is that she is being denied access to the appellate process because her fee waivers and appeal requests were denied by Judge Porto. *See* Amend. Compl. ¶ 30. She also describes the various difficulties she has encountered in both her attempts to file legal paperwork and while participating in Court hearings. *Id.* ¶¶ 24, 25, 31-33, 35-37. The Supreme Court has held that "within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004). But it must be made plain that the denial of a request to appeal a matter is not equivalent to the denial of being able to request an appeal. It is clear from the record that Plaintiff had access to, and repeatedly availed herself of, the opportunity to be heard and filed numerous appeals in her state cases. Further, while access to court proceedings generally is a service provided by the State, not all aspects of judicial process is considered a "service, program, or activity." *See Geness v. Admin. Office of Pa. Courts*, 974 F.3d 263, 277 (3d Cir. 2020) (citing *Disability Rights N.J. Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 305, 307 (3d Cir. 2015)) (holding that the provision of judicial process before the forcible nonemergent administration of psychotropic drugs is not a service, program, or activity of New Jersey from which the civilly committed are excluded). Moreover, there is an important distinction between challenging judicial decision making and challenging court administrative practices. *See Geness*, 974 F.3d at 272-73, 274 n.12, 276 n.13 (3d Cir. 2020). To have an appellate court hear an appeal is not a matter of right—it requires judicial decision making and depends on judicial conduct, which is protected by immunity—and thus cannot be construed as a "service, program, or activity" that would be classified as an administrative practice. *Id.* at 277 ("Nonetheless, the 'service, program, or activity' must be one that the entity actually provides."). Therefore, this Court cannot say that Plaintiff was denied the opportunity to be heard, nor can it

hold that Plaintiff was excluded from a service, program, or activity because her claims are based on judicial decision making.

Even if the Court were to find that Plaintiff was excluded in some way from state court proceedings, the Amended Complaint fails to sufficiently plead that such exclusion was due to her disability. To demonstrate causation, that Defendant excluded Plaintiff from a service because of her disability, a plaintiff must show that their disability "played a role" in the decision-making process and "had a determinative effect on the outcome of that process." *Berk*, 2024 WL 3639442 at *6. The causation standard is a "but-for" standard, which is "less demanding" but still requires a plaintiff to identify a causal connection between the disability and the provision of inadequate services. *Jackson*, 2024 WL 1928513 at *8.

Here, Plaintiff's allegations are too conclusory. While the Court acknowledges Plaintiff's frustrations with the New Jersey Court System, the Court is not empowered to take action unless a plaintiff provides factual allegations "enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Quite simply, just because a judge rules against a disabled person's claims does not automatically render the decision impermissible discrimination based on the plaintiff's disability: there must be more factual averments present for the Court to traverse before arriving at the minimum level of plausibility for a complaint to survive review pursuant to Rule 12(b)(6).

Therefore, Plaintiff fails to state a claim under Title II of the ADA, and the analysis of the Court must stop here. Without a viable ADA claim, the Court cannot assess the constitutionality of the claims, nor determine the validity of the abrogation. Rather, the Court must dismiss Plaintiff's ADA claims for failure to state a claim upon which relief can be granted.

### E. Injunctive Relief

To demonstrate the need for a permanent injunction, a plaintiff must demonstrate: 1) actual success on the merits, 2) whether denial of injunctive relief will result in irreparable harm to the moving party, 3) whether granting a permanent injunction will result in even greater harm to the defendant, and 4) whether the injunction serves the public interest. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

Plaintiff fails the first prong because there are insufficient facts to support any of the claims in her Amended Complaint, therefore Plaintiff cannot demonstrate "actual success on the merits." Additionally, denial of injunctive relief will not result in irreparable harm to the moving party: the state court is entitled to determine whether claim or issue preclusion applies to their cases without interference from a federal court, and her malpractice case at issue here (ATL-L-003744-21) was dismissed without prejudice on June 7, 2024, due to Plaintiff's failure to submit an expert report. *See* ATL-L-003744-21 at LCV20241652022. A denial without prejudice means that Plaintiff could reinstate the case or re-file her complaint to litigate those claims, so Plaintiff is not left without recourse in state court. Finally, the Court notes that Plaintiff's desire to advocate for additional resources for disabled individuals pursuing litigation in the New Jersey State Courts is commendable, but seeking an injunction within the factual and procedural constraints of this case does not meet the requisite legal requirements.

## V.      CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, (ECF No. 36), is **GRANTED** as to all claims, with prejudice. An order consistent with this Opinion that will be entered.

August 30, 2024

_____
KAREN M. WILLIAMS, U.S.D.J.